[Civ. No. 8802. Second Appellate District, Division One.—April 5, 1935.]

OTTO S. SNOFFER, Respondent, v. THE CITY OF LOS ANGELES (a Municipal Corporation), Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and G. Ellsworth Meyer, Deputy City Attorney, for Appellant.

E. H. Delorey for Respondent.

EDMONDS, J., *pro tem.*—Plaintiff sued for damage to real property which he alleged was caused by the act of the defendant city in changing the grade of La Brea Avenue. He had judgment upon the verdict of a jury for $300, and thereafter moved for a new trial. This motion was granted and the defendant appeals from the judgment and from the order granting the new trial.

The motion for new trial was made upon the grounds of: "1. Insufficiency of the evidence to justify the verdict of the jury, in that the evidence adduced at the trial related to the question of damages to plaintiff herein on June 1, 1929, and that the jury took into consideration in assessing damages matters not produced in evidence at times and dates subse-

quent to the date of damage. 2. The verdict of the jury and judgment entered thereon is against the law. 3. Irregularities in proceedings of the jury. 4. Irregularities in proceedings of opposing counsel. 5. Misconduct of the jury in that the jury took into consideration facts not in evidence, upon which facts the jury arrived at its verdict."

The first, third and fifth causes specified as grounds for a new trial were supported by the affidavit of one of the jurors, with a statement of eight of the others to the effect that such affidavit was correct. According to this affidavit the jurors considered as evidence matters within the personal knowledge of some of them and not shown by the evidence, were confused by some of the rulings of the court, and did not understand the law. The verdict of a jury cannot be impeached upon any such showing. In *Rosenberg* v. *George A. Moore & Co.*, 194 Cal. 392, 396 [229 Pac. 34], the Supreme Court again approved its earlier statement in *People* v. *Findley*, 132 Cal. 301 [64 Pac. 472], where it said: "It is the settled law of this state that the verdict of a jury cannot be impeached by the affidavits of jurors showing misconduct on the part of any member of the jury, except where the verdict is reached 'by a resort to the determination of chance'. (Code Civ. Proc., sec. 657.) Nor can a verdict be impeached by the hearsay statements of jurors regarding such misconduct (*People* v. *Azoff*, 105 Cal. 632 [39 Pac. 59])." The affidavit should not, therefore, have been considered by the trial court and it afforded no basis for the order upon the three grounds mentioned. Also, as no affidavit was filed supporting the fourth ground, the order could not have been based thereon.

This leaves for consideration only the ground that "the verdict and judgment entered thereon is against the law".

For while the appellant seeks to show that the new trial was granted upon the ground of the insufficiency of the evidence to sustain the verdict and the judgment thereon, the record does not support that position. It is true that the minute order of the court recites that the motion is granted "on all the grounds set forth in the Notice of Intention to move for a new trial and particularly on the grounds of the insufficiency of the evidence to sustain the verdict". But this was not one of the grounds specified in the motion for a

new trial. The first ground of the motion mentions insufficiency of the evidence, but as relating only to the asserted misconduct of the jury. The order could not, therefore, have been made upon the general ground of the insufficiency of the evidence to sustain the verdict.

We have, therefore, the situation of the respondent insisting in support of the order granting a new trial, that the verdict of the jury is against the law, and the appellant asserting the same thing on its appeal from the judgment. The respondent does not point out any reasons for this position other than the grounds for a new trial which have heretofore been discussed.

■ Appellant contends that the respondent property owner can recover no judgment, for the reason that he did not file any written protest against the improvement of the street at the time specified in the ordinance of intention, and also that he did not present his claim for damages with the board of public works of the city. Error is also predicated by appellant upon the action of the trial court in striking out testimony concerning the value of the property.

So far as the record shows, La Brea Avenue prior to the acts complained of, was a public street for which no official grade had been established by the city. The improvement of the street was initiated by an ordinance declaring the intention of the council of the City of Los Angeles to order the improvement of La Brea Avenue and other streets "by certain grading, and by the construction of certain concrete pavement" and other improvements. Pertinent provisions of this ordinance are "that all of the work aforesaid shall be done in accordance with and to the grade shown on special plans and profiles" referred to as being particularly numbered and on file in the office of the city engineer; that "said plans, profiles and specifications are hereby referred to for a full and complete description of said proposed work or improvement, and for the description of the grade to which the work is to be done, and are made a part thereof"; and "that the proceedings for the said aforesaid improvement shall be had and taken under and in accordance with an act of the Legislature of the State of California designated and known as the 'Improvement Act of 1911', approved April 7, 1911". (Deering's Gen. Laws, 1931 ed., Act 8199.)

Section 3 of the act referred to, as it existed at the time of the passage of the ordinance and the doing of the work complained of in this action, provided as follows: "The grade to which any work shall be done or improvement made shall be such as may be shown on the plans or profiles therefor or it may be done on such a grade as may have been formally established by the city council. If any official grade has already been adopted or established for any of the streets, avenues, or other places or property, proposed to be improved, it shall be lawful for the resolution of intention to provide that said work shall be done to new grades or grades different from those so established or adopted, and shall refer to plans, profiles or specifications for the description of the grade at which the work is to be done. Any property owner whose property is to be assessed to pay the costs and expenses of the proposed improvement may at the time fixed in the resolution of intention for hearing of objections to the proposed work and improvement, appear before the city council and make objection to the proposed grade or proposed modification of grade. A failure to make objection at such time shall be deemed to be a waiver of all objections to the proposed grade or, proposed change or modification of grade and shall operate as a bar to any claim for damages or any subsequent action looking to the prevention of the work or the recovery of damages on account of the performance of the work to such grade or changed grade. The provisions of this section relative to grades are alternative and shall not repeal other provisions of this act or other statutes relative to change of grade." (Stats. 1923, chap. 56, sec. 3, pp. 106, 107.)

Plaintiff made no objection to the proposed improvement, and appellant contends that such failure of plaintiff to present his objections to the council bars any recovery by him under the quoted provisions of the act. Respondent excuses his failure to make objection on the ground that the ordinance of intention is insufficient by its terms to charge the property owners with notice of any change of grade.

By the Improvement Act under which the proceedings were taken, "the said resolution of intention shall be sufficient if it states in general terms the class or kinds of work contemplated such as grading, paving, sewering or other

work or improvements, and gives in general the location of the proposed improvement and refers to plans, profiles, detailed drawings and specifications or such of them as may be suitable or proper for the full and detailed description of the said proposed work or improvement''. (Improvement Act of 1911, *supra*.) The ordinance of intention gave as much information as the statute required, and was certainly sufficient to charge the property owner with notice of the proposed improvement. As early as 1865 the Supreme Court said: ''The Board are not required to describe the work with any more exactness than it is described by law itself. When the Board say they intend to grade a certain street, they have said all that is needed by way of description. No property holder can be in doubt as to what is to be done. He knows that the street is to be so filled in or excavated, as the case may be, as to make it conform to the official grade of the city; all of which the word grade itself imports, and the description of the work would have been no better or more complete had this definition of the term been employed instead of the term itself. The notice is to be read to the property holder in the light of the law which confers the power upon the Board, for that law is, so to speak, a part of the notice. By that law he is informed that the Board can only grade a street to the official grade of the city, and he is therefore fully informed as to what the Board intended to do, and he has no right to assume that they intend to make a grade not authorized by law and use the assumption as a foundation upon which to ground an objection to the notice." (*Emery* v. *San Francisco Gas Co.*, 28 Cal. 345, 376].) ''To grade a street is to reduce it either by filling or excavation to a fit or established degree of ascent or descent." (*Wilcoxson* v. *City of San Luis Obispo*, 101 Cal. 508 [35 Pac. 988].) In another leading case it was said: ''When the owner of property was told by the resolution in the present case that the street was to 'be graded to the official grade and macadamized' he was given such description of the work as would intelligently convey the intention of the board as to the work contemplated, and its character and extent. The words, 'grade to the official grade and macadamized', have well-understood meanings, and their use alone at once conveys to the mind

the nature and character of the work and the materials to be used." (*Schwiesau* v. *Mahon*, 128 Cal. 114, 116 [60 Pac. 683, 684].)

Notice of the proposed improvement being sufficient, plaintiff's claims were barred by his failure to make objection within the time fixed in the ordinance of intention. A city in initiating a proceeding under the Improvement Act in question does so upon the condition expressly stated in the law, that any property owner who intends to claim damages on account of the improvement will make that fact known. If no objections are received the city has a right to proceed upon the assumption that no claims for damages can thereafter be made. The purpose of requiring objections before any work is actually done is to enable the city to determine what damages, if any, will have to be paid by reason of the improvement. When objections are filed the city then has an opportunity to determine whether to proceed with the improvement or to abandon it. If property owners were allowed to wait until after the work was completed before they were required to make their claims known, a city might be faced with demands for such amounts as, had they been known before, would have justified the abandonment of the proposed improvement. The fact that no claims for damages can be made against the city other than those preserved by means of objections filed within the time fixed by the ordinance of intention is certainly one of the important things for the city council to know in determining whether or not to go on with the proposed work. ■ While a city cannot damage property without compensation to the owner, it may limit the time within which and the place where claims against it must be presented. (*Sala* v. *City of Pasadena*, 162 Cal. 714, 718 [124 Pac. 539].)

Upon both reason and authority it must be held that the claims of the plaintiff became barred by reason of his failure to object to the grade fixed, within the time specified in the ordinance of intention.

The order granting respondent's motion for a new trial is reversed, and the judgment is reversed, with directions to the trial court to enter judgment for the appellant.

Conrey, P. J., and Houser, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 1, 1935, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 3, 1935.